IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT TRUJILLO, SR., Individually, and
ERLINDA TRUJILLO, as guardian and
next friend of ROBERT TRUJILLO, JR, a
minor child, Individually and STARLYNE
TRUJILLO, a minor child, Individually,

      Plaintiffs,

vs.                                                                                                  Civil No. 03-0580 WPJ/LFG

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ. P. 56, filed October 3, 2003 **(Doc. 8)**. Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is well-taken and will be granted.

### BACKGROUND

The facts of this case start out as a child custody dispute. According to the allegations in the Complaint, Plaintiff Erlinda Trujillo, the estranged spouse of Robert Trujillo, Sr., ("Mr. Trujillo") contacted the Isleta Police Department and requested that law enforcement officers come to her residence located on the Pueblo because she believed that her ex-spouse was

intoxicated and should not have the children. Three Isleta Tribal Police officers, Caryn Romero ("Romero"), Darryl Chavez ("Chavez") and Victor Day ("Day) arrived at Erlinda Trujillo's residence shortly after Robert Trujillo, Sr. had departed with the children on route to his grandmother's house. The officers pursued Mr. Trujillo to the grandmother's house. The officers placed the two minor children in the locked back passenger compartment of a police unit and then attempted to place Mr. Trujillo under arrest. Plaintiffs allege that, while Mr. Trujillo remained passive, he would not allow the police officers to place handcuffs on his wrist. Plaintiffs also allege that the three officers physically attacked and beat Robert Trujillo Sr., and used excessive, unreasonable, unjustified deadly force without legal probable cause that he had committed any criminal offense and that the minor children witnessed the alleged attack on their father.[1]

The Complaint, which asserts jurisdiction under the Federal Tort Claims Act, 28 USC §1346(b) and §2671 et seq. ("FTCA"), seeks compensation for assault (Count I), battery (Count II), false arrest (Count III), false imprisonment (Count IV), malicious prosecution (Count V), abuse of process (Count VI), intentional infliction of emotional distress (Count VII), and negligent infliction of emotional distress (Count VIII) for Plaintiff Robert Trujillo, Sr., negligent infliction of emotional distress (Count IX) and false imprisonment (Count X) for Plaintiff Robert Trujillo, Jr., and, negligent infliction of emotional distress (Count XI) and false imprisonment (Count XII) for Plaintiff Starlyne Trujillo.

**Legal Standard**

A party may go beyond the allegations contained in the complaint and challenge the facts

---

[1] Under Defendant's statement of facts, undisputed by Plaintiffs, Mr. Trujillo was charged in the Isleta Pueblo Tribal Court with several offenses related to the incident. The Tribal Court judge dismissed all charges.

upon which jurisdiction depends. Sizova v. National Institute of Standards & Technology, 282 F.3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A Rule 12(b) motion to dismiss can challenge the substance of the complaint's jurisdictional allegation in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court. Sizova, 282 F.3d at 1324-25; New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495 (10th Cir. 1995). A court has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts under Rule 12(b). In such instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a Rule 56 motion. Sizova, 282 F.3d 1324-25; Holt, 46 F.3d at 1003. However, if resolution of the jurisdictional question is intertwined with the merits of a case, a court must convert a motion to dismiss for lack of subject matter jurisdiction into a motion to dismiss for failure to state claim or motion for summary judgment. Sizova, 282 F.3d at 1324-25; Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997) Holt, 46 F.3d at 1003. A jurisdictional question is intertwined with the merits of a case if subject matter jurisdiction is dependent on the same statute that provides the substantive claim in the case. Sizova, 282 F.3d at 1324-25; Holt, 46 F.3d at 1003. In this case, both the subject matter jurisdiction of this Court and Plaintiffs' substantive claims depend on the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). Resolution of the jurisdictional issue will require the Court to look beyond the allegations in the pleadings. Thus, Defendant's Motion will be converted to and analyzed as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## DISCUSSION

The FTCA sets forth certain conditions under which the United States waives its sovereign immunity and authorizes suits for damages. See Berkovitz v. United States, 486 U. S. 531, 535 (1988). The general rule under the FTCA is that the "district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346( b).  This waiver of immunity is subject to certain statutory exceptions enumerated in 28 U.S.C. § 2680.

Under § 2680(h), the United States retains its sovereign immunity with respect to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process" and other specified intentional torts. The exception is, however, subject to the following:

> *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

In other words, sovereign immunity is waived for those intentional tort exceptions listed in §2680(h) when committed by law enforcement officers acting within the scope of their employment. The question to be decided here is whether Officers Romero, Chavez and Day, who

4

responded to Ms. Trujillo's call, were federal law enforcement officers when they allegedly committed the acts described in the Complaint. Under the language in § 2680(h), Plaintiff's FTCA claims can proceed only if the answer is yes.

The objective behind Public Law 93-638, enacted in 1975 as the Indian Self-Determination and Education Assistance Act ("ISDEAA"), was to increase tribal participation in the management of federal Indian programs and activities. See 25 U.S.C. §§ 450 *et seq.* ISDEAA allowed tribes to enter into contracts with the Bureau of Indian Affairs ("BIA") in the Department of the Interior ("DOI") to administer programs or services that would otherwise have been administered by the federal government. The Isleta Police Department was funded pursuant to a such a contract. The objective, as contained in the contract, was to provide law enforcement services to all pueblo of Isleta residents, according to the guidelines contained in the Pueblo of Isleta Law and Order Code, and to respond to any and all verbal or written complaints registered by residents of the Isleta Indian Reservation.

Defendant acknowledges that the tribal officers involved here are federal employees for purposes of the FTCA by virtue of the Public Law 93-638 contract that funded the Isleta Police Department. See 25 U.S.C. § 450f(d). However, Defendant urges that although the officers are federal employees for purposes of the FTCA, the statutory exceptions in § 2680(h) bar Plaintiffs' claims because they are not federal "law enforcement officers." Plaintiff's reliance on the ISDEAA helps only with the issue which Defendant does not challenge and on which there is no question – that the three tribal officers are considered federal employees under the general provisions of the FTCA. See Comes Flying v. U.S., 830 F.Supp. 529 (D.S.D. 1993).

Nothing in the ISDEAA, or in relevant case law, suggests that the mere existence of a

5

Public Law 93-638 contract between BIA and a tribe for the provision of law enforcement services automatically confers federal law enforcement authority upon the officers in tribal police departments. Absent the power to enforce federal law, tribal officers are not federal investigative or law enforcement officers. See, Dry v. U.S. 235 F.3d 1249, 1257 (10th Cir. 2000) (although tribal officers had DOI employee status, they acted with tribal law authority, and not as federal law enforcement officers, when acting under a Choctaw/BIA contract under the Indian Law Enforcement Act);[2] see also U.S. v. Rubin, 573 F.Supp. 1123 (D.C.Colo. 1983) (finding that United States Attorney, his assistants and Justice Department attorneys were not "law enforcement officers" for purposes of 28 U.S.C. § 2680(h) because they were not empowered to execute search warrants, to seize evidence, or to make arrests for violation of federal law); accord, Wilson v. U.S., 959 F.2d 12 (2d Cir. 1992)(involving parole officers).

Thus, the answer to whether Officers Romero, Chavez and Day are "law enforcement officers" under § 2680(h), lies in the particular contract under which the services are carried out. In U.S. v. Young, 85 F.3d 334 (8th Cir. 1996), cited by Plaintiffs, the court held that a Sioux Tribe police officer was a federal officer for purposes of 18 U.S.C.A. § 111, a criminal statute which addresses "assaulting, resisting or impeding certain officers or employees." This case is not similar enough to the present case to be helpful to Plaintiffs. The court's decision in Young turned on the particulars of the contract the tribe had entered into with the DOI, which indicated that the

---

[2] Defendant also offers a case with issues strikingly similar to the present case, Morsette v. U.S., 26 Ind.L.Rep.3052 (Sept 17, 1998), which held that tribal officers, while covered by a self-determination contract and considered federal employees for purposes of FTCA, were not federal law enforcement officers under § 2680(h) absent a showing that they performed federal law enforcement duties, were cross deputized, or were called upon to perform in emergencies to enforce federal law. Ex. C.

tribal officers were hired to perform law-enforcement functions "that would otherwise be performed by BIA officers." Further, the court emphasized that not every person carrying out a "Public law 638 contract" fits the definition of a federal officer -- which brings the inquiry full circle to a look at the contract at issue here.

Defendant has presented evidence which confirms that under the contract between the Isleta Pueblo and the BIA, Officers Romero, Chavez and Day did not perform, nor were they called upon to enforce, federal law enforcement duties. The "Law Enforcement Program" contract between BIA and the Isleta Pueblo did not state or otherwise mention federal law enforcement as one of its objectives.[3] Ex. A, Attachment 1. Under the policy directive followed by the BIA, only tribal officers who received special law enforcement officer ("SLEO") commissions could assist the BIA "in enforcing applicable Federal criminal statutes, including Federal hunting and fishing regulations, in Indian country." Bowekaty Decl., Ex. B.[4] These commissions were issued "on a case-by-case basis for each officer being entrusted" with federal authority and responsibility, and issued only to qualified full-time tribal criminal investigators and tribal police officers. Ex. B, and Ex. B, Attachment 1; see also 25 C.F.R. § 12.21(b).  The Isleta Pueblo's Chief of Law Enforcement stated in his affidavit that Romero, Chavez and Day "were enforcing provisions of the Pueblo of Isleta Law and Order Code and not Federal law." Ex. A.  The BIA did not issue SLEO commissions to Officers Romero, Chavez or Day at any time.      Plaintiffs do

---

[3] As "Contractor," the Pueblo was required to "provide oral testimony, written reports, service of warrants, and any other assistance requested by the Isleta Tribal Court and other tribal, federal, and state courts." Ex. A, Attachment 1, at 21. The Contractor was also to "assist" in the investigation of federal or state offenses. However, none of these obligations are analogous with federal law enforcement duties.

[4] Such authorization is pursuant to 25 C.F.R. § 12.21.

7

not offer any factual evidence which conflicts with Defendants' Statement of Facts, or which rebuts evidence which indicates that the three officers were not performing the duties of federal law enforcement officers. Nor do Plaintiffs offer evidence which suggests that the officers were "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law," in order to bring their allegedly tortious actions within the purview of § 2680(h). See Arnsberg v. U.S., 757 F.2d 971 (9th Cir. 1984) (FTCA limits the United States' liability to instances where wrongful acts by law enforcement officers).  I must therefore accept Defendants' material facts and evidence as true. See Locke v. U.S., 215 F.Supp.2d 1033 (D.S.D. 2002) (intentional tort exception to FTCA precluded claim where plaintiff did not challenge evidence to the effect that tribal officer did not receive necessary certification, enforced only tribal laws or ordinances, and was not a federal law enforcement officer).

Under different circumstances, the acts of Romero, Chavez and Day might subject the United States to liability because of their status as federal employees.  In the present circumstances, and based on the foregoing discussion, I conclude that the intentional torts exception (§ 2680(h)) applies to Officers Romero, Chavez and Day because they are not "law enforcement officers." Thus, the United States is immune from liability for those claims.

Negligence Claims

Plaintiffs contend that their claims for Negligent and Intentional Infliction of Emotional Distress are not barred by § 2680(h).  However, § 2680(h) does not merely bar claims for assault or battery; it "excludes any claim *arising out of* assault or battery." U.S. v. Spelar, 338 U.S. 217, 219 (1949)(emphasis added); U.S. v. Shearer, 473 U.S. 52, 55 (1985). This includes not only claims that sound in negligence, but also those that stem from a battery committed by a

Government employee. Id. Plaintiffs cannot turn an intentional tort into negligence conduct by a turn of a phrase -- by merely labeling the conduct as negligence. See Wine v. United States, 705 F.2d 366, 367 (10th Cir.1983).

The nature of Plaintiffs' claims are properly determined by focusing not on the label Plaintiffs use, but on the conduct upon which the allegations are premised. Benavidez v.U.S., 177 F.3d 927, 931 (10th Cir. 1999). Plaintiffs describe the violating conduct as a "physical assault." They state that the three tribal officers "attacked" and "beat" Mr. Trujillo, and that "[i]n the process they used excessive, unreasonable, unjustified deadly force without legal probable cause. . . ." ¶¶19, 20.  Because the conduct underlying Plaintiffs' "negligence" claims clearly arises out of Plaintiffs' claims for intentional torts, they are barred by 28 U.S.C. § 2680(h). Cmp. U.S. v. Shearer, 473 U.S. 52 (1985) (assault and battery claim could not be maintained against the United States by couching it in negligence terms).

Request to Amend

Given the disposition of the case, Plaintiffs' request to amend the Complaint to amend a typographical error is denied.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ. P. 56 **(Doc. 8)** is hereby GRANTED, and the case is DISMISSED.

_____
UNITED STATES DISTRICT JUDGE